IN THE UNITED STATES DISTRICT COURT **FILED**
FOR THE DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION          SEP 0 3 2013

CLERK

---

UNITED STATES OF AMERICA,

*Plaintiff,*

v.

CHIROPRACTIC ASSOCIATES, LTD.
OF SOUTH DAKOTA,

*Defendant.*

CASE NO.  CV 13-04030 - LLP

---

## FINAL JUDGMENT

WHEREAS, Plaintiff, the United States of America, filed its Complaint on April 8, 2013, alleging that Defendant, Chiropractic Associates, Ltd. of South Dakota, engaged in conduct in violation of Section 1 of the Sherman Act, as amended, 15 U.S.C. § 1, and Plaintiff and Defendant have consented to the entry of this Final Judgment without trial or adjudication of any issue of fact or law;

AND WHEREAS, this Final Judgment does not constitute any admission by Defendant that the law has been violated or of any issue of fact or law, other than an admission that the jurisdictional facts alleged in the Complaint are true;

AND WHEREAS, the essence of this Final Judgment is to restore competition, as alleged in the Complaint, and to restrain Defendant from participating in any unlawful conspiracy to increase fees for Physician services;

AND WHEREAS, the United States requires Defendant to be enjoined

- 1 -

from rendering services to, or representing, any Physician pertaining to such Physician's dealing with any Payer, for the purpose of preventing future violations of Section 1 of the Sherman Act;

AND WHEREAS, Defendant agrees to be bound by the provisions of this Final Judgment pending its approval by the Court;

AND WHEREAS, Plaintiff requires Defendant to agree to undertake certain actions and refrain from certain conduct for the purpose of remedying the loss of competition alleged in the Complaint;

AND WHEREAS, Defendant has represented to the United States that the actions and conduct restrictions can and will be undertaken and that it will later raise no claim of hardship or difficulty as grounds for asking the Court to modify any of the provisions contained below;

NOW THEREFORE, before any testimony is taken, without trial or adjudication of any issue of law or fact, and upon consent of Plaintiff and Defendant, it is ORDERED, ADJUDGED, AND DECREED:

## I.  JURISDICTION

This Court has jurisdiction over the subject matter of, and each of the parties to, this action.  The Complaint states a claim upon which relief may be granted against Defendant under Section 1 of the Sherman Act, as amended, 15 U.S.C. § 1.

## II.  DEFINITIONS

As used in this Final Judgment:

(A)    "Communicate" means to discuss, disclose, transfer, disseminate,

- 2 -

or exchange information or opinion, formally or informally, directly or indirectly, in any manner;

(B)   "Credentialing Services" means a service that recognizes and attests that a physician is both qualified and competent, and that verifies that a physician meets standards as determined by an organization by reviewing such items as the individual's license, experience, certification, education, training, malpractice and adverse clinical occurrences, clinical judgment, and character by investigation and observation;

(C)   "Defendant" or "CASD" means the Chiropractic Associates, Ltd. of South Dakota, a company organized and doing business under the laws of South Dakota; its successors, assigns, subsidiaries, divisions, groups, partnerships, joint ventures, and each entity over which it has control, including Chiropractic Associates of North Dakota, LLC, Chiropractic Associates of Minnesota, LLC, Chiropractic Associates of Iowa, LLC; and their directors, officers, managers, agents, representatives, and employees;

(D)   "Messenger" means the Defendant when it Communicates to a Payer any information Defendant has received from a Physician, or Communicates to any Physician any information Defendant receives from any Payer;

(E)   "Participating Provider Agreement" means a contract entered into by a Physician with CASD that allows the Physician to participate in a Payer Contract;

(F)   "Payer" means any Person that purchases or pays for all or part of

a Physician's services for itself or any other Person and includes, but is not limited to, individuals, health insurance companies, health maintenance organizations, preferred provider organizations, and employers;

(G)    "Payer Contract" means a contract entered into by a Payer with CASD that sets the prices and price-related terms between CASD's Physician members and the Payer;

(H)    "Person" means any natural person, corporation, firm, company, sole proprietorship, partnership, joint venture, association, institute, governmental unit, or other legal entity;

(I)    "Physician" means a doctor of chiropractic medicine (D.C.), a doctor of allopathic medicine (M.D.), or any other practitioner of chiropractic, allopathic, or other medicine;

(J)    "Third-Party Messenger" means a Person other than Defendant that uses a "messenger model" as set forth in Statement 9(C) of the 1996 Statements of Antitrust Enforcement Policy in Health Care, 4 Trade Reg. Rep (CC) ¶ 13,153, provided that the messenger model does not create or facilitate an agreement among competitors on prices or price-related terms;

(K)    "Utilization Review Services" means a service that Defendant provides to a Payer that establishes mechanisms to monitor and control utilization of health care services and that is designed to control costs and assure quality of care by monitoring over-utilization of health care services, provided that such mechanisms are not used or designed to increase costs or utilization of health care services.

- 4 -

### III.   **APPLICABILITY**

This Final Judgment applies to Defendant and to any Person, including any Physician, in active concert or participation with Defendant, who receives actual notice of this Final Judgment by personal service or otherwise.

### IV.   **PROHIBITED CONDUCT**

Defendant is enjoined from, in any manner, directly or indirectly:

(A)   providing, or attempting to provide, any services to any Physician regarding such Physician's actual, possible, or contemplated negotiation or contracting with any Payer, or other dealings with any Payer;

(B)   acting, or attempting to act, in a representative capacity, including as a Messenger or in dispute resolution (such as arbitration), for any Physician with any Payer;

(C)   Communicating, reviewing, or analyzing, or attempting to Communicate, review, or analyze with or for any Physician, except as consistent with Section VI(A), about (1) that Physician's, or any other Physician's, negotiating, contracting, or participating status with any Payer; (2) that Physician's, or any other Physician's, fees or reimbursement rates; or (3) any proposed or actual contract or contract term between any Physician and any Payer;

(D)   facilitating Communication or attempting to facilitate Communication, among or between Physicians, regarding any proposed, contemplated, or actual contract or contractual term with any Payer, including the acceptability of any proposed, contemplated, or actual contractual term,

- 5 -

between such Physicians and any Payer;

(E)    entering into or enforcing any agreement, arrangement, understanding, plan, program, combination, or conspiracy with any Payers or Physicians to raise, stabilize, fix, set, or coordinate prices for Physician services, or fixing, setting, or coordinating any term or condition relating to the provision of Physician services;

(F)    requiring that CASD Physician members negotiate with any Payer through CASD or otherwise restricting, influencing, or attempting to influence in any way how CASD Physician members negotiate with Payers;

(G)    coordinating or Communicating, or attempting to coordinate or Communicate, with any Physician, about any refusal to contract, threatened refusal to contract, recommendation not to participate or contract with any Payer, or recommendation to boycott, on any proposed or actual contract or contract term between such Physician and any Payer;

(H)    responding, or attempting to respond, to any question or request initiated by any Payer or Physician relating to (1) a Physician's negotiating, contracting, or participating status with any Payer; (2) a Physician's fees or reimbursement rates; or (3) any proposed or actual contract or contract term between any Physician and any Payer, except to refer a Payer to a Third-Party Messenger and otherwise to state that this Final Judgment prohibits any additional response; and

(I)    training or educating, or attempting to train or educate, any Physician in any aspect of contracting or negotiating with any Payer, including,

but not limited to, contractual language and interpretation thereof, methodologies of payment or reimbursement by any Payer for such Physician's services, and dispute resolution such as arbitration, except that Defendant may, provided it does not violate Sections IV(A) through IV(H) of this Final Judgment, (1) speak on general topics (including contracting), but only when invited to do so as part of a regularly scheduled medical educational seminar offering continuing medical education credit; (2) publish articles on general topics (including contracting) in a regularly disseminated newsletter; and (3) provide education to physicians regarding the regulatory structure (including legislative developments) of workers' compensation, Medicaid, and Medicare, except Medicare Advantage.

PROVIDED HOWEVER, that Section IV does not enjoin Defendant from providing Credentialing Services and Utilization Review Services.

## V.     **REQUIRED CONDUCT**

(A)     Defendant must terminate, without penalty or charge, and in compliance with any applicable laws, any Payer Contracts at the earlier of (1) receipt by Defendant of a Payer's written request to terminate such Payer Contract, (2) the earliest termination date, renewal date (including automatic renewal date), or the anniversary date of such Payer Contract, or (3) three months from the date the Final Judgment is entered.

PROVIDED HOWEVER, a Payer Contract to be terminated pursuant to Section V(A)(2) of this Final Judgment may extend beyond any such termination, renewal, or anniversary date, by up to three months from the date

the Final Judgment is entered, if:

       (a)    the Payer submits to Defendant a written request to extend such Payer Contract to a specific date no later than three months from the date that this Final Judgment is entered; and

       (b)    Defendant had determined not to exercise any right to terminate.

       PROVIDED FURTHER, that any Payer making such request to extend a Payer Contract retains the right, pursuant to Section V(A) of this Final Judgment, to terminate the Payer Contract at any time.

(B)    Defendant must terminate, without penalty or charge, and in compliance with any applicable laws, any Participating Provider Agreement and all other contracts relating to Payers with any CASD members at the earlier of (1) receipt by Defendant of any Physician member's written request to terminate such Participating Provider Agreement, (2) the date all Payer Contracts applicable to a Physician member are terminated pursuant to Section V(A), or (3) three months from the date the Final Judgment is entered. Defendant may distribute a revised membership agreement to its Physician members that omits any reference to collectively contracting with Payers or other services prohibited by Section IV, and that otherwise does not violate this Final Judgment.

## VI.   __PERMITTED CONDUCT__

(A)    Defendant may engage in activities that fall within the safety zone set forth in Statement 6 of the 1996 Statements of Antitrust Enforcement

Policy in Health Care, 4 Trade Reg. Rep. (CC) ¶ 13,153.

(B)     Nothing in this Final Judgment shall prohibit Defendant, or any one or more of CASD's members, from advocating or discussing, in accordance with the doctrine established in *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961), *United Mine Workers v. Pennington*, 381 U.S. 657 (1965), and their progeny, legislative, judicial, or regulatory actions, or other governmental policies or actions.

## VII.   COMPLIANCE

To facilitate compliance with this Final Judgment, Defendant shall:

(A)     distribute by first-class mail within 30 days from the entry of this Final Judgment a copy of the Final Judgment; the Competitive Impact Statement; and a cover letter that is identical in content to Exhibit A to:

(1)     all of CASD's directors, officers, managers, agents, employees, and representatives, who provide or have provided, or supervise or have supervised the provision of, services to Physicians; and

(2)     all of CASD's Physician members;

(B)     distribute by first-class mail within 30 days from the entry of this Final Judgment a copy of the Final Judgment; the Competitive Impact Statement; and a cover letter that is identical in content to Exhibit B to the chief executive officer of each Payer with whom CASD has contracted since January 1, 2002, regarding contracts for the provision of Physician services;

(C)     distribute a copy of this Final Judgment and the Competitive Impact Statement to:

- 9 -

(1)     any Person who succeeds to a position with CASD described in Section VII(A)(1), in no event shall such distribution occur more than 15 days later than such a Person assumes such a position; and

(2)     any Physician who becomes a member of CASD, in no event shall such distribution occur more than 15 days later than such Physician becomes a member;

(D)     conduct an annual seminar explaining to all of CASD's directors, officers, managers, agents, employees, and representatives, the restrictions contained in this Final Judgment and the implications of violating the Final Judgment;

(E)     maintain an internal mechanism by which questions about the application of the antitrust laws and this Final Judgment from any of CASD's directors, officers, managers, agents, employees, and representatives can be answered by counsel as the need arises;

(F)     within ten days of receiving a Payer's written request to terminate a Payer Contract pursuant to Section V(A) of this Final Judgment, distribute, by first-class mail, return receipt requested, a copy of that request to each Physician in such Payer Contract as of the date that CASD receives such request to terminate; and

(G) maintain for inspection by Plaintiff a record of recipients to whom this Final Judgment and Competitive Impact Statement have been distributed.

## VIII.  CERTIFICATION

(A)     Within 30 days after entry of this Final Judgment, Defendant shall

- 10 -

certify to the Chief of the Litigation I Section, Antitrust Division, United States Department of Justice, that it has provided a copy of this Final Judgment to all Persons described in Sections VII(A) and VII(B) of this Final Judgment.

(B)     For a period of ten years following the date of entry of this Final Judgment, Defendant shall certify to the Chief of the Litigation I Section, Antitrust Division, United States Department of Justice, annually on the anniversary date of the entry of this Final Judgment that each, respectively, and all of CASD's directors, officers, managers, agents, employees, and representatives, if applicable, have complied with the provisions of this Final Judgment.

## IX.   COMPLIANCE INSPECTION

(A)     For the purposes of determining or securing compliance with this Final Judgment or determining whether the Final Judgment should be modified or vacated, and subject to any legally recognized privilege, authorized representatives of the United States Department of Justice, including consultants and other Persons retained by the United States, shall, upon written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division, and upon five days notice to Defendant, be permitted:

(1)     access during CASD's regular business hours to inspect and copy, or, at the United States' option, to require that Defendant provide copies of all books, ledgers, accounts, records and documents in its possession, custody, or control, relating to any matters contained in this Final Judgment;

- 11 -

(2)    to interview, either informally or on the record, any of CASD's officers, directors, employees, agents, managers, and representatives, who may have their individual counsel present, regarding such matters. The interviews shall be subject to the reasonable convenience of the interviewee and without restraint or interference by Defendant; and

(3)    to obtain from Defendant written reports or responses to written interrogatories, under oath if requested, relating to any matters contained in this Final Judgment.

(B)    No information or documents obtained by the means provided in this Section shall be divulged by Plaintiff to any Person other than authorized representatives of the executive branch of the United States, except in the course of legal proceedings to which the United States is a party (including grand jury proceedings), or for the purpose of securing compliance with this Final Judgment, or as otherwise required by law.

(C)    If at any time Defendant furnishes information or documents to the United States, Defendant represents and identifies in writing the material in any such information or documents to which a claim of protection may be asserted under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure, and marks each pertinent page of such material, "Subject to claim of protection under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure," then the United States shall give Defendant ten calendar days' notice prior to divulging such material in any legal proceeding (other than a grand jury proceeding) to which such Defendant is not a party.

- 12 -

## X.    RETENTION OF JURISDICTION

This Court retains jurisdiction to enable any party to this Final Judgment to apply to this Court at any time for further orders and directions as may be necessary or appropriate to carry out or construe this Final Judgment, to modify any of its provisions, to enforce compliance, and to punish violations of its provisions.

## XI.    EXPIRATION OF FINAL JUDGMENT

Unless this Court grants an extension, this Final Judgment shall expire ten years from the date of its entry.

## XII.    PUBLIC INTEREST DETERMINATION

The parties have complied with the requirements of the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16, including making copies available to the public of this Final Judgment, the Competitive Impact Statement, and any comments thereon and the United States' responses to comments.  Based upon the record before the Court, which includes the Competitive Impact Statement and any comments and responses to comments filed with the Court, entry of this Final Judgment is in the public interest.

Dated:  SEPTEMBER 3, 2013

UNITED STATES DISTRICT JUDGE

- 13 -

**Exhibit A**

[Letterhead of CASD]

[Name and Address of Member]

Dear Member:

The United States District Court for the District of South Dakota has entered a Final Judgment prohibiting the Chiropractic Associates, Ltd., of South Dakota ("CASD") from collectively contracting with payers or engaging in other anticompetitive activities. A copy of the Final Judgment and a Competitive Impact Statement prepared in accordance with the Antitrust Penalties and Procedures Act, 15 U.S.C. § 16, are enclosed.

In order that you may readily understand the terms of the Final Judgment, we have set forth its essential provisions and describe its application to CASD's payer contracting activities, although you must realize the Final Judgment is controlling, rather than the following explanation of provisions.

(1) CASD is prohibited from negotiating or contracting with payers on behalf of any physician, except to provide credentialing and utilization review services.

(2) CASD is prohibited from reviewing or analyzing any contractual terms between a physician and a payer, and is prohibited from communicating about a physician's negotiation or contracting with any payer.

(3) CASD is prohibited from engaging in conduct that promotes members' collective boycotts or refusals to contract with payers.

(4) CASD may not require that CASD members negotiate with payers through CASD.

(5) CASD may not respond to any question or request initiated by a payer relating to (a) a physician's negotiating, contracting, or participating status with any payer; (b) a physician's fees or reimbursement rates; or (c) any proposed or actual contract or contract term between any physician and any payer, except to refer a payer to a third-party messenger and otherwise to state that the Final Judgment prohibits any additional response. Provided however,

- 14 -

that the Final Judgment does not enjoin CASD from providing credentialing services and utilization review services.

(6)   All of CASD's contracts with payers currently in effect generally must be cancelled upon, whichever comes first, written request by a payer to terminate, the termination date, renewal date, or anniversary date of such contract, or within three months from the date of the entry of the Final Judgment.

(7)   All of CASD's contracts with its members currently in effect must be cancelled upon, whichever comes first, written request by a member to terminate, when all payer contracts between CASD and a payer applicable to that member have been terminated, or within three months from the date of the entry of the Final Judgment.  Provided, however, that nothing shall prohibit CASD and its member from entering into new membership agreements that comply with the terms of the Final Judgment.  CASD will send you under separate cover a new membership agreement that complies with the terms of the Final Judgment.

(8)   CASD members and its practice groups may immediately contract individually with payers.

If you have any questions, please do not hesitate to contact me.

Sincerely,

[Appropriate CASD representative]

**Exhibit B**

[Letterhead of CASD]

[Name and Address of Payer's CEO]

Dear [_____]:

      Enclosed is a copy of a Final Judgment, issued by the United States District Court for the District of South Dakota, and a Competitive Impact Statement, issued in accordance with the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16, against the Chiropractic Associates, Ltd., of South Dakota.

      Pursuant to Section V Paragraph A of the Final Judgment, all payer contracts with CASD will terminate at the earlier of (1) receipt by CASD of a payer's written request to terminate such contract, (2) the earliest termination date, renewal date (including automatic renewal date), or the anniversary date of such contract, or (3) three months from the date the Final Judgment is entered.  CASD members and their practice groups may immediately contract individually with payers.

      If your contract expires prior to a date that is three months from the date the Final Judgment is entered, you may request an extension of the contract to a date no later than three months from the date the Final Judgment is entered. If you choose to extend the term of the contract to the extent permitted by the Final Judgment, you may later terminate the contract at any time.

      Any request to either to terminate or extend the contract should be made in writing, and should be sent to me at the following address: [address].

Sincerely,

[Appropriate CASD representative]

- 16 -

# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH DAKOTA**
**SOUTHERN DIVISION**

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   *Plaintiff,*<br>  v.<br><br>CHIROPRACTIC ASSOCIATES, LTD.<br>OF SOUTH DAKOTA,<br><br>   *Defendant.* | CASE NO.  CV 13-04030 - LLP |

**CERTIFICATE OF COMPLIANCE WITH PROVISIONS OF THE ANTITRUST**
**PROCEDURES AND PENALTIES ACT**

Plaintiff United States of America, by the undersigned attorney, certifies

that it has complied with the provisions of the Antitrust Procedures and

Penalties Act, 15 U.S.C. § 16(b)-(h) ("APPA" or "Tunney Act"), and states:

1.  The proposed Final Judgment and Competitive Impact Statement

were filed on April 8, 2013;

2.  Pursuant to 15 U.S.C. § 16(b), the proposed Final Judgment and

Competitive Impact Statement were published in the *Federal Register* on April

17, 2013, *see* 78 Fed. Reg. 22901 (2013);

3.  Pursuant to 15 U.S.C. § 16(c), a summary of the terms of the

proposed Final Judgment and Competitive Impact Statement was published in

*The Washington Post,* a newspaper of general circulation in the District of

Columbia, for seven consecutive days beginning on April 15, 2013, and ending

- 2 -

on April 21, 2013, and published in the *The Argus Leader* a newspaper of general circulation in South Dakota, for seven days beginning on April 15, 2013, and ending on April 21, 2013.

4.      Pursuant to 15 U.S.C. § 16(g), Defendant filed with the Court on April 18, 2013, a description of communications by or on behalf of Defendant with any officer or employee of the United States concerning or relevant to the proposed Final Judgment.

5.      The sixty-day comment period specified in 15 U.S.C. § 16(b) ended on June 20, 2013.

6.      The United States received one public comment on the proposed Final Judgment.

7.      On August 5, 2013, the United States filed with the Court its response to the public comment.

8.      On August 12, 2013, the United States published its response and the public comment in the *Federal Register, see* 78 Fed. Reg. 48904 (2013).

9.      Pursuant to the Stipulation filed on April 8, 2013, and 15 U.S.C. § 16(e), the Court may enter the proposed Final Judgment after it determines that the proposed Final Judgment serves the public interest;

10.      The United States' Competitive Impact Statement and Response to Public Comment demonstrate that the proposed Final Judgment satisfies the public interest standard of 15 U.S.C. § 16(e); and

11.      The parties have now satisfied all the requirements of the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16(b)-(h), as a condition for entering

- 3 -

the proposed Final Judgment, and it is now appropriate for the Court to make

the necessary public interest determination required by 15 U.S.C. § 16(e) and

to enter the proposed Final Judgment.

Dated:  August 29, 2013.                       Respectfully submitted,

                                               **UNITED STATES OF AMERICA**
                                               BRENDAN JOHNSON
                                               United States Attorney


                                               _/s/ Cheryl Schrempp DuPris_
                                               Cheryl Schrempp DuPris
                                               **Assistant United States Attorney**
                                               P.O. Box 7240
                                               225 S. Pierre Street, Suite 337
                                               Pierre, S.D. 57501
                                               (605) 224-1256 ext 2204
                                               Cheryl.Dupris@usdoj.gov


                                               RICHARD D. MOSIER
                                               (D.C. Bar No. 492489)
                                               JULIE A. TENNEY
                                               Attorneys for the United States
                                               Antitrust Division
                                               United States Department of Justice
                                               450 Fifth Street, N.W., Suite 4100
                                               Washington, D.C. 20530
                                               Telephone:  (202) 307-0585
                                               Facsimile:  (202) 307-5802
                                               Email:  Richard.Mosier@usdoj.gov